IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARY E. G.,**

    **Plaintiff,**

v.                                                                                                                  No. 1:24-cv-00537-JHR

**FRANK J. BISIGNANO, Commissioner**
**of Social Security,**[1]

    **Defendant.**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REMAND AND REVERSING THE COMMISSIONER'S FINAL DECISION

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for an Award of Immediate Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum [Doc. 15]. The Commissioner of Social Security filed a response [Doc. 21] and Plaintiff replied [Doc. 22]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry H. Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. The Court has reviewed the parties' briefing, the administrative record [Doc. 10] ("AR"), and applicable law. The Court **GRANTS IN PART** Plaintiff's motion to remand, **REVERSES** the Commissioner's final decision, and will remand for further proceedings.

### I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act on January 12, 2018. (AR 93). Plaintiff alleged an onset of disability as of May 27, 2014, caused by osteoarthritis, bipolar disorder, attention deficit hyperactivity disorder

---

[1] With his appointment as Commissioner of Social Security on May 7, 2025, Bisignano is automatically substituted as the appropriate party. Fed. R. Civ. P. 25(d).

1

("ADHD"), bursitis in the right knee, right knee issues, and right tibia issues. (AR 95). The Commissioner denied her claim on September 28, 2018, and again upon reconsideration on March 14, 2019. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on January 17, 2020, Plaintiff and her attorney appeared before ALJ Stephen Gontis. (AR 34). On February 12, 2020, ALJ Gontis issued his written decision finding Plaintiff was not disabled because she could still perform past relevant work. (AR 22). The Administration's Appeals Council denied Plaintiff's request for review. (AR 2342).

Plaintiff appealed to this Court pursuant to 42 U.S.C. § 405(g). (AR 2311). The Commissioner moved unopposed to remand pursuant to Sentence Four of 42 U.S.C. § 405(g), and the Court granted the motion without further analysis. (AR 2313–14). The Appeals Council issued a notice of remand directing the ALJ to resolve new and material evidence for consideration and reconsider Plaintiff's past relevant work since her work as a tax preparer did not qualify. (AR 2317–18). ALJ Michael Leppala held a rehearing on January 5, 2023, and afterwards issued a written decision finding Plaintiff was not disabled because she could still perform past relevant work. (AR 2276).

Plaintiff appealed to this Court directly pursuant to 20 C.F.R. § 416.1484(d). [No. 1:23-cv-00295-MLG-KRS, Doc. 1]. The Commissioner again moved unopposed to remand pursuant to Sentence Four, and the Court granted the motion and remanded for further administrative proceedings. (AR 3388). The Appeals Council's notice of remand directed the ALJ to adequately evaluate the medical source opinions and prior administrative medical findings, further consider Plaintiff's residual functional capacity ("RFC"), and obtain supplemental evidence from a vocational expert if warranted. (AR 3393). Plaintiff reappeared before ALJ Leppala who issued a

written decision on March 27, 2024, finding Plaintiff was not disabled because she could still perform past relevant work. (AR 3325).

## II. STANDARD OF REVIEW

When a party appeals an adverse disability decision the reviewing court must affirm if the ALJ applied correct legal standards and supported his factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense, setting aside technicalities to determine whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure to follow legal standards will warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). However, an error in evaluating evidence or applying the proper legal standard will not require remand if it would be "inconceivable" that a different conclusion would be reached absent the error. *Crawford v. Saul*, 487 F. Supp. 3d 1021, 1026 (D. Colo. 2020) (quoting *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for a conclusion—in comparative terms, more than a scintilla but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). To determine if the ALJ met the standard, the court must examine the whole record including any evidence that may undercut or detract from the findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The ALJ need not explicitly address all evidence in the record so long as he adequately supports his decision, notes the uncontroverted evidence he does not rely on and the significantly probative evidence he rejects, and explains why. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). But the court may not

"reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Even if the reviewing court would resolve the matter differently, it must affirm unless the record overwhelms the factual findings or the decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.    THE COMMISSIONER'S FINAL DECISION

A claimant who seeks disability insurance benefits ("DIB") under the Social Security Act must demonstrate that she cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[2] Those five steps ask (1) whether the claimant is still engaged in a substantial gainful activity; if not, (2) whether the claimant is suffering from any impairments significantly limiting her ability to do basic work activities; (3) if so, whether those impairments meet or equal the criteria of a listed impairment; (4) if not, whether the claimant's RFC would preclude her from performing her past relevant work, and finally; (5) if so, whether the claimant's age, education, experience, and RFC would enable her to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if her medical impairments are per se disabling or otherwise prevent her from performing her past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a). Plaintiff bears the burden of proof for the first four steps, but the burden shifts to the

---

[2] Regulations for determining whether a claimant is disabled for both DIB and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

4

Commissioner at step five to prove the claimant could still perform work existing in significant number in the national economy. *Lax*, 489 F.3d at 1084 (citation omitted).

**A.      The ALJ's Findings at Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016, and had not engaged in substantial gainful activity since May 27, 2014. (AR 3310). Therefore, Plaintiff had to prove she qualified for DIB on or before December 31, 2016. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity, degenerative joint disease of the right knee, intervertebral disc degeneration of the lumbosacral region, lumbar spondylosis, and bipolar disorder. (AR 3311). The ALJ did not make any findings of non-severe impairments.

Proceeding to step three, the ALJ found Plaintiff's physical limitations did not meet the criteria for listed musculoskeletal disabilities because her use of a cane was not shown to be continuously required until after the date of last insured. (AR 3311). The ALJ also made findings on the severity of Plaintiff's mental impairments pursuant to the "paragraph B" criteria. *See* 20 C.R.F. § 404.1520a(c)(3). On a scale of none, mild, moderate, marked, and extreme, a claimant that has one extreme mental limitation or two marked mental limitations in four functional areas may satisfy a listed mental disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast a moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.* The ALJ found Plaintiff had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (AR 3311). The ALJ also found Plaintiff had mild limitations in interacting with others and adapting or managing herself. (AR 3311–12).

**B.      The ALJ's RFC Assessment.**

The physical exertion requirements for types of work are categorized as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ determined that Plaintiff had an RFC for "light work," 20 C.F.R. § 404.1567(b), with the following additional restrictions:

> [Plaintiff] was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She was further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; she was further limited to frequently balancing and stooping, occasionally kneeling, crouching, and crawling rather than constantly. The [Plaintiff] could understand, carry out, and remember simple and detailed, but not complex, instructions and make commensurate work-related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in work setting; and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.

(AR 3312–13). In making his determination, the ALJ reviewed Plaintiff's statements about her symptoms and their effects on her daily activities, her evaluation and treatment records, and several medical opinions. (AR 3313–24). The ALJ discussed the persuasiveness of the opinions and notes of Richard Sorenson, PhD, Laura Eckert, PhD, Cheri Cerghizan, CNP, Dr. John Vigil, Kyle Schoenberger, DNP, Dr. Nancy Shrestha, Consuelo Cash, LCSW, Dr. Jeffrey Faludi, Dr. Herbert Meites, treating source Dr. Gina Miller, treating source Dr. Kevin McGee, and Dr. Niyati Patel. (AR 3313–24).

Relevant to this Court's opinion, at step three the ALJ noted years' worth of notes documenting Plaintiff's use of an assistive device for her knee, alternating between a cane and a walker. (AR 3311). The ALJ also recited her history of knee issues, including multiple surgeries, during which Plaintiff's range of motion improved over time but she continued to struggle with gait issues and muscular atrophy in the quadricep and hamstring. (AR 3314–15). And finally, the ALJ's review of the medical opinions expressly discussed how Faludi and Miller noted Plaintiff's need for a cane. (AR 3320–21). However, the ALJ concluded that "the record does not say or

suggest that this was medically required continually until December 31, 2016." (AR 3311). The ALJ also determined that medical opinions finding less severe limitations on Plaintiff's ability to walk, balance, and stoop were more persuasive. (AR 3320–24).

### C.    The ALJ's Findings at Step Four.

The ALJ found persuasive the vocational expert's testimony that Plaintiff's past relevant work is classifiable under the Dictionary of Occupational Titles as "administrative records clerk" and "medical records clerk." (AR 3324–25). The vocational expert testified that based on Plaintiff's descriptions of her prior work duties, her RFC would prevent her from performing that work as she "actually" did it, but not as it is generally performed in the national economy. (AR 3325). Therefore, the ALJ determined that Plaintiff did not qualify for DIB because her physical and mental limitations, as encapsulated in the RFC, did not prevent her from being able to perform her past relevant work. (AR 3325).

## IV.    BRIEFING SUMMARY

On appeal, Plaintiff asserts four grounds upon which reversal of the Commissioner's final decision is proper. Plaintiff argues first that the ALJ failed to make specific findings about the demands of her past relevant work, investigate the composite nature of her previous jobs, or adequately explain how her RFC would not preclude her from returning to that work. [Doc. 15, at 6–10]. Second, Plaintiff argues the ALJ did not adequately assess and explain the persuasiveness of the medical opinions of Schoenberger and Shrestha. *Id.* at 11–15. Third, the ALJ's finding that Plaintiff did not have a continuous need for a hand-held assistive walking device during the relevant period was not based on substantial evidence. *Id.* at 16–19. And fourth, the ALJ neglected to properly discuss Plaintiff's subjective reports of her pain. *Id.* at 19–25. Plaintiff argues the Court should remand with a direction to grant an immediate award of disability benefits due to the case's

age, the multiple remands, and the fact that further fact-finding would serve no beneficial purpose. *Id.* at 26–27.

On the first argument, The Commissioner responds that the ALJ properly relied on the testimony of the vocational expert for his past relevant work assessment pursuant to binding Tenth Circuit authority. [Doc. 21, at 20–23]. For Plaintiff's second argument, the Commissioner asserts that the ALJ adequately discussed his assessment of Schoenberger's and Shrestha's opinions, comparing them to the conflicting and wide-ranging opinions in the record and incorporating the limitations he found persuasive into the RFC. *Id.* at 17–20. Regarding Plaintiff's use of a cane, the Commissioner argues that the ALJ reasonably relied on the fact that multiple medical opinions did not conclude Plaintiff continuously required an assistive walking device and properly incorporated the opinions' assessed ambulation limitations into the RFC. *Id.* at 10–13. Finally, the Commissioner identifies the ALJ's treatment of pain symptoms incorporated in his discussion of Plaintiff's function report and treatment records. *Id.* at 13–17. However, in the event the Court determines reversal is required the Commissioner opposes award of immediate benefits because the record does not conclusively demonstrate entitlement. *Id.* at 23–24. In reply, Plaintiff disputes the Commissioner's characterization of the evidence in the record. [Doc. 22].

## V.     ANALYSIS

The Court finds that the ALJ committed reversible error in his assessment of Plaintiff's medical need for a cane. However, the Court will not award Plaintiff immediate benefits because further fact-finding would serve a useful purpose. The Court will not address Plaintiff's remaining claims of error because they may be affected by the disposition of the case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**A.     The ALJ's Finding that Plaintiff Did Not Continuously Require a Cane Was Not Based on Substantial Evidence.**

1. *Applicable law for assistive devices.*

For evaluating listed musculoskeletal disorders at step three, an "assistive device" is any device used by the claimant to improve stability, dexterity, or mobility. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00C6a. Hand-held assistive devices include walkers, canes, and crutches. *Id.* § 1.00C6d. If a claimant requires a one-handed assistive device and cannot use the other arm for fine or gross movements,[3] the assistive device is considered a limitation on the use of both arms. *Id.* To prove a hand-held assistive device is required, the claimant must present evidence "from a medical source that *supports* [her] medical need" for the device for a continuous period of at least twelve months. *Id.* § 1.00C6a (emphasis added). The evidence must include a description of the limitations it causes in "upper or lower extremity functioning and the circumstances" for which the claimant needs the device. *Id.* Proof of a prescription for the assistive device is not required. *Id.* A "medical source" under § 1.00C6a means:

> [A]n individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

20 C.F.R. § 404.1502(d).

A virtually identical standard applies for formulating a claimant's RFC. The ALJ must consider whether the need for an assistive device might significantly erode a claimant's potential

---

[3] The Commissioner defines fine and gross movements as follows:

> Fine movements, for the purposes of these listings, involve use of your wrist, hands, and fingers; such movements include picking, pinching, manipulating, and fingering. Gross movements involve use of your shoulders, upper arms, forearms, and hands; such movements include handling, gripping, grasping, holding, turning, and reaching. Gross movements also include exertional abilities such as lifting, carrying, pushing, and pulling. Examples of performing fine and gross movements include, but are not limited to, taking care of personal hygiene, sorting and handling papers or files, and placing files in a file cabinet or at above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00E4.

occupational range. *Aguirre v. Saul*, No. 18-cv-01111, 2019 WL 2552224, at *3 (W.D. Okla. June 20, 2019) (citing SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996)); *see also Staples v. Astrue*, 329 F. Appx 189, 191 n.1 (10th Cir. 2009) (SSR 96-9P's standard for assistive devices may apply to all RFC analyses). Medical documentation must both establish the need for the device and the circumstances where it's needed, such as "all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information." SSR 96-9P, 1996 WL 374185, at *7. However, a claimant need not produce a prescription for the device to prove its medical necessity. *Staples*, 329 F. App'x at 191.

    2.    *The ALJ erred in his analysis of Plaintiff's medical need for a cane.*

The record is replete with evidence that Plaintiff continuously required an assistive device for ambulation before her last insured date. Plaintiff received multiple surgeries on her right leg prior to 2016 for an injury suffered in October 2014, and her medical providers consistently noted issues with muscular atrophy, range of motion, walking, and balance and Plaintiff's continued dependence on some combination of a cane, walker, and knee brace to ambulate. (AR 374–75, 378, 386, 394, 398, 406, 418, 425, 439, 476, 480, 497, 505, 560). In 2015, McGee noted that despite improvement in her range of motion, Plaintiff was "too unstable to be able to ambulate without [an] assistive device." (AR 492). Treatment notes from July 20, 2016, noted Plaintiff had begun walking with just an ACL brace, but Plaintiff continued reporting significant pain, weakness, and walking issues, leading to a refitting for a new brace. *See* (AR 554–558). In his treatment notes from November 18, 2016, McGee noted:

> [Plaintiff] is now about 2.5 years from her initial injury and surgery and 1.5 years out from her ligament reconstruction. I think she is probably getting close to as good as she will get in regards [sic] to her knee. She had a very severe injury to this knee *and it will never be normal again*. She has done an exhaustive amount of therapy and can continue this at home to try and increase strength and endurance.

(AR 554) (emphasis added). By January 27, 2017, Plaintiff needed a cane again to walk. (AR 560). On January 23, 2024, Miller submitted a letter discussing Plaintiff's medical history beginning in 2014 which included the need for a cane "daily" after her surgeries and development of severe knee osteoarthritis (AR 3725). In addition, both Faludi's September 2018 opinion and Meites' March 2019 opinion noted Plaintiff's use of a cane during the relevant period. (AR 100, 113).

  The ALJ found Plaintiff's treatment notes showed she "used a cane and a walker sometime after her surgeries . . . but the record does not say or suggest that this was medically required continually until December 31, 2016." (AR 3311). In medical opinions, the ALJ noted mention of the cane only with respect to Miller's letter and Faludi's opinion. (AR 3320–21). The ALJ found Miller's letter somewhat persuasive, stating her medical history supported "the [Plaintiff] has used a cane at times." (AR 3321). The ALJ found Faludi's opinion "largely persuasive," though he found Meites' opinion more so given he had an opportunity to review more medical records. (AR 3320). The ALJ also rejected McGee's opinion of Plaintiff's significant ambulation restrictions in 2016 as temporary post-surgery measures. (AR 3324).

  The ALJ's conclusion that the record contained no support of a continuous need by Plaintiff for a cane does not rest on substantial evidence. The treatment notes demonstrate Plaintiff month after month between 2014 and 2016 needing either a walker or a cane to ambulate effectively. While Plaintiff attempted to walk on a knee brace alone in November 2016, her issues persisted so consistently that it led McGee to conclude that Plaintiff's knee had improved as far as it could. (AR 554). Those issues forced her doctors to try a more substantial brace in December 2016 before she returned to a cane in January 2017. (AR 558, 560). This interruption of Plaintiff's cane use is insufficient to discount its continuous medical requirement for two reasons. First, an ALJ may not select specific moments or time frames to make a misleading disability determination for a multi-

11

year period. *Grace A. T. v. Dudek*, No. 24-cv-00243, 2025 WL 926583, at *6 (D.N.M. Mar. 27, 2025). Second, Plaintiff did not have to prove twelve months of continual cane use had already occurred prior to the date of her last insured, only that her need for her cane could be *expected* to last twelve consecutive months. *See* SSR 23-1P, 2023 WL 8236247, at *2. The ALJ neither acknowledged this probative evidence supporting a continuous medical need for a cane nor assessed its weight.

The Commissioner argues substantial evidence supports the ALJ's conclusion because several medical opinions in the record did not mention a medical need for a cane and the ALJ discounted the ones that did. [Doc. 21, at 10–11, 13]. In addition, the Commissioner asserts that those opinions and Plaintiff's treatment notes did not constitute a "documented medical need" for a cane as required by regulations. *Id.* at 12–13. Neither argument is persuasive. A "documented medical need" does not require an explicit prescription from a medical provider; it need only "support" the claimant needs an assistive device and describe the circumstances of that need. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00C6a; *Staples*, 329 F. App'x at 191. Plaintiff's treatment notes and Miller's letter satisfy that standard. *See* SSR 96-9P, 1996 WL 374185, at *7 (circumstances may include the need for the device "all the time"). Furthermore, the ALJ himself concluded the record supported that Plaintiff medically required a cane. (AR 3311). He rejected Plaintiff's cane as part of his assessment of her impairments and RFC because the record lacked evidence the cane was *continually* required. *See* (AR 3311). But the record contains probative evidence that Plaintiff's cane became a daily necessity. The Court cannot adopt a new post-hoc rationalization for the ALJ's erroneous rejection of this evidence. *E.g.*, *Allen*, 357 F.3d at 1145.

The Commissioner next advances two harmless error arguments. First, the Commissioner argues Plaintiff bore the burden of proving at step three not only the necessity of an assistive device

12

but also the other listing requirements for disorders of the skeletal spine resulting in compromise of nerve roots (20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15) or lumbar spinal stenosis resulting in compromise of the cauda equina (*id.* § 1.16). [Doc. 21, at 12]. Second, the Commissioner argues the ALJ's RFC was based on a valid assessment of medical opinions that took into consideration Plaintiff's ambulation issues more generally. *Id.* at 11, 13. Neither argument is persuasive.

The ALJ never considered the additional listing requirements under §§ 1.15 and 1.16, and even if it were "inconceivable" that Plaintiff could satisfy them on this record it still would not render harmless the exclusion of the cane from the ALJ's RFC assessment. The ALJ consistently discounted medical opinions that Plaintiff had more severe ambulation and posture issues, favoring instead Meites' March 2019 opinion. (AR 3320–24). If, however, the ALJ had properly considered the evidence for Plaintiff's medical need for a cane, he might have found stricter physical limitations more consistent with the record and therefore more persuasive. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00E4; *see also* SSR 96-9P, 1996 WL 374185, at *7. Consequently, the ALJ would have given the vocational expert a more restrictive RFC to consider or at least inquired about how the use of a cane would impact Plaintiff's ability to work. SSR 96-9P, 1996 WL 374185, at *7. Thus, the ALJ's error was not harmless.

In sum, the ALJ erred because his finding that Plaintiff did not continuously require a cane was not based on substantial evidence, and the error was not harmless.

**B.    The Court Will Not Award Immediate Benefits and Instead Will Remand for Further Proceedings.**

Plaintiff argues that the Court should remand with an order for an award of immediate benefits. [Doc. 15, at 26–27]. Plaintiff recites that her claim has pended for over seven years, she has now testified three times, the case's age means further proceedings will unlikely result in useful

13

additional evidence, and she has carried her burden of proof at the first four steps multiple times. *Id.* at 26.

Whether to award immediate benefits is a matter of discretion based on factors such as the age and posture of the case and if further fact-finding would be useful or merely delay benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006); *Sisco v. DHHS*, 10 F.3d 739, 746 (10th Cir. 1993). While the age of this case supports an award of immediate benefits, its current posture warrants remand. The previous two remands were uncontested, and this order represents the first time the ALJ's decision has been reviewed on the merits.[4] Additionally, all three administrative decisions concluded Plaintiff was not disabled at step four; Plaintiff's assertion about carrying her factual burden thrice is not borne out by the record. No opinion has yet concluded that the Commissioner failed to meet his burden at step five. Finally, the issue addressed here by the Court—the medical necessity of Plaintiff's cane—is but one factor in determining whether the cane precludes Plaintiff from substantial gainful activities. *See, e.g.*, SSR 96-9P, 1996 WL 374185, at *7.[5] Thus, while a rehearing may not produce much new evidence given the case's age, further fact-finding would serve a useful purpose. The Court cautions the Commissioner, however, that he "is not entitled to adjudicate a case ad infinitum" until he gets it right. *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (quotation omitted).

## VI. CONCLUSION

---

[4] The Court does not consider this fact dispositive or even persuasive on its own. In context, however, the Court finds it persuasive of the need for further fact-finding.

[5] The Court notes that while it did not address Plaintiff's other arguments, they too focus on whether the ALJ applied the appropriate legal standards or ignored probative evidence, not that the record heavily favors a finding of disability such that further fact-finding would be useless.

For the reasons above, the Court GRANTS IN PART Plaintiff's motion to remand, REVERSES the Commissioner's final decision, and REMANDS for a rehearing consistent with this order.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge